UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AQUILA INSPECTION SERVICES, LLC,
a Florida limited liability company,

*Plaintiff*,

v.

CASE NO:

WEINTRAUB ENGINEERING and
INSPECTIONS, INC. f/k/a WEINTRAUB
INSPECTIONS & FORENSIC, INC., a
Florida corporation; and
JERRY M. WEINTRAUB, an individual,

*Defendants*.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Aquila Inspection Services, LLC, through undersigned counsel, files this Complaint against Weintraub Engineering and Inspections, Inc., f/k/a Weintraub Inspections & Forensic, Inc., and Jerry M. Weintraub[1] and states:

## INTRODUCTION

1. Plaintiff and Defendants directly compete to provide building inspection services throughout Florida.

2. This case arises out of a long-running fraudulent scheme by Weintraub and his company that has jeopardized the public welfare and allowed the company to gain an unfair competitive advantage in the market.

---

[1] Plaintiff Aquila Inspection Services, LLC is referred to as "Aquila" or "Plaintiff." Defendant Weintraub Engineering and Inspections, Inc., f/k/a Weintraub Inspections & Forensic, Inc., is referred to as "WEI." Defendant Jerry M. Weintraub is referred to as "Weintraub." WEI and Weintraub are collectively referred to as "Defendants."

3. Weintraub and his company, WEI, hold themselves out to current and potential clients as enforcing applicable building codes, using highly qualified inspectors, and abiding a number of professional standards and guidelines, including the standards published by the American Society for Testing and Materials.

4. Defendants' sales pitch is that they can provide code-compliant inspections by qualified inspectors in a quicker turn-around time and at a lower cost than their rivals.

5. In reality, Weintraub and WEI deceive their current and potential clients by engaging in fraudulent inspections at every phase of construction.

6. Building inspectors inspect construction projects at various phases of construction to ensure compliance with accepted industry standards and state-mandated codes.

7. Building inspectors' fidelity to code enforcement is crucial to all parties involved: Contractors need to know they are in compliance with applicable codes to protect their licenses. Insurers need to know that what they are insuring is structurally sound. Sellers need to be able to accurately value property based on it being up to applicable codes. And, most importantly, the eventual residents' safety is dependent upon homes being built to applicable standards and codes.

8. WEI, at the behest of Weintraub, has shirked its duty to all of these parties. For years, Defendants have instructed WEI inspectors to ignore applicable provisions of the code. Defendants have sent unqualified inspectors to job sites, with Weintraub personally signing off on defective inspections. Defendants have also instructed at least one employee to pass inspections without actually inspecting the respective construction sites. Defendants' conduct was entirely motivated by its desire to increase profits and enhance its position in the marketplace.

9. Defendants' systematic use of fraudulent inspections affords them an unfair market advantage. Defendants are able to perform more services at a cheaper price than competitors—

including Plaintiff—because Defendants are violating the applicable laws, whereas Plaintiff is complying with those laws.

10. Plaintiff brings this action to recover damages stemming from Defendants' conduct to the fullest extent permitted by law, to obtain an injunction prohibiting further false advertising and barring WEI from soliciting any building inspection projects for the pendency of this litigation or until such time as WEI can demonstrate that it has taken appropriate remedial action, and for an affirmative injunction requiring Defendants to engage in corrective advertising and make appropriate disclosures to its clients and prospective clients.

## PARTIES

11. Aquila is a Florida limited liability company with its principal place of business located in Highlands County, Florida.

12. WEI is a Florida corporation with its principal place of business in Hillsborough County, Florida.

13. Weintraub is a Florida citizen residing in Hillsborough County, Florida. At all times material, Weintraub has been WEI's President.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

15. This Court has personal jurisdiction over WEI because it is a for profit corporation with its principal place of business in Hillsborough County, Florida, and continuously conducts business in Hillsborough County, Florida.

16. This Court has personal jurisdiction over Weintraub because he is a resident of Hillsborough County, Florida.

3

17. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because the Defendants are subject to personal jurisdiction in this District and because the acts giving rise to the claims herein occurred in this District.

**GENERAL ALLEGATIONS**

a. **The Building Inspection Industry**

18. Aquila and Defendants compete to provide building inspection services throughout Florida.

19. Builders are typically large national and regional corporations that simultaneously construct multiple homes in a subdivision or development. Builders contract with building inspectors to inspect construction projects at various stages of completion. The timing and scope of these inspections are mandated by Florida law and the municipality where the project is taking place.

20. Despite the existence of a contractual relationship between builder and inspector, the builder can typically cancel the contract at any point without paying a penalty.

b. **Building Inspection Guidelines**

21. Building inspectors rely on three sources to guide inspections in Florida: the Florida Building Code ("FBC"), municipal amendments to the FBC, and the ASTM International ("ASTM").

22. The FBC sets forth standards and guidelines regarding the design, construction, erection, alteration, modification, repair, and demolition of public and private buildings and structures in Florida. At its core, the FBC exists to protect the public.

23. In certain instances, the FBC allows local governments to render the FBC more stringent by modifying it.

24. The ASTM provides guidelines and standards for utilizing an array of materials, products, systems, and services in the home building process.

25. The ASTM is incorporated into the FBC. The ASTM applies where the FBC is silent. Where the ASTM and FBC conflict, the FBC governs. As a rule, the FBC is more stringent than the ASTM.

**c. Third-Party Building Inspectors: Licensed and Unlicensed.**

26. There are two basic types of third-party building inspectors: licensed and unlicensed.

27. Licensed inspectors, such as those employed by Plaintiff, hold licensure from the state of Florida. To acquire a license, inspectors are required to demonstrate four years of competency as well as 40 hours per week of inspection services for four years.

28. Unlicensed inspectors require no such training. An individual performing unlicensed inspections submits his or her findings to a licensed inspector, who then signs off on the inspection by providing a certificate of compliance with the code to the client.

29. Although there is nothing inherently improper about unlicensed third-party inspections, the unlicensed third-party inspection process relies heavily on the veracity of the certifying licensed inspector.

30. Both licensed and unlicensed inspectors compete for the same business.

**d. Defendants' False Advertising and Misleading Representations**

31. Defendants hold themselves out to their actual and prospective customers as enforcing all applicable codes, including the FBC, and utilizing qualified inspectors.

5

32. Defendants repeatedly make these representations to all of their customers and potential customers when they submit bids and proposals on jobs, wherein Defendants represent and warrant the same.

33. Defendants' representations are false and misleading.

*i. **Defendants Intentionally Ignore Applicable Building Codes***

34. Defendants solicit clients – primarily builders – via email, telephone, and in person and offer inspection services, compliant with the FBC and all applicable codes, and performed by qualified inspectors.

35. Defendants then submit bids, job proposals, and statements of work that affirmatively represent that Defendants will comply with all applicable codes, including the FBC. That is a lie.

36. Defendants, through Weintraub and Jon Wolfersberger ("Wolfersberger"), WEI's Vice President and Director of Inspection Services, order WEI inspectors to ignore various applicable codes and standards when conducting inspections.

37. Weintraub and Wolfersberger are industry veterans, well aware of what is required for a valid FBC inspection.

38. Examples of applicable codes that Defendants, through Weintraub and Wolfersberger, order WEI inspectors to ignore include those pertaining to:

   a. **Stucco control joints.** Stucco is a siding material made of Portland cement, sand, lime, and water that is frequently used on the exterior of homes in Florida. The FBC requires a control joint every eighteen linear feet or 144 square feet of stucco siding. Absent these control joints, stucco walls are far more likely to crack due to expansion and contraction. Tens of millions of dollars are spent every year in

Florida alone correcting—and litigating—issues related to improper stucco installation. Defendants instructed its inspectors to not enforce code related to stucco control joints.

b. **Return ducts**. A return duct removes air from a room, allowing for circulation of air throughout a home. The FBC requires 100 square inches to be drawn from a room by way of an undercut at the base of a door or a grate above the door frame. Absent this, central heat and air units are required to work harder, resulting in extensive energy waste. Further, absent a properly sized return duct, there is a significant increase in stagnant air and humidity within the home. In Florida, this results in an increase in the presence of mold. Defendants instructed its inspectors to not enforce code related to return ducts

c. **Vapor retardant garage walls**. Vapor retardant products prevent, among other things, the transfer of condensation. The FBC requires vapor retardant products be used on non-climate controlled garage walls. This is because in warm, humid climates such as Florida, vapor-dense air from the exterior can infiltrate a garage, causing liquid to accrue in a wall cavity. This means that absent the code mandated application of vapor retardant products, there is an increase in the prevalence of mold and decrease in the structural security of the garage walls. Defendants instructed its inspectors to not enforce code related to vapor retardant garage walls.

39. WEI sends unlicensed inspectors perform these inspections. These unlicensed inspectors then submit their inspections to Weintraub.

40. Weintraub, fully knowing that he instructed the unlicensed inspectors to ignore substantial parts of the code and fully knowing that the inspection is not accurate, then signs off on the inspection.

41. Weintraub completes a certificate of compliance with the FBC and/or ASTM. Because Defendants instruct their unlicensed inspectors to ignore various sections of the FBC and/or ASTM on the front end of the inspection, these certificates are routinely fraudulent.

42. In addition to its intentionally incomplete inspections, Defendants have required Usha Ramachandran, WEI's Vice President of Operations, to record that she was on the premises of numerous sites that she never visited and to pass inspections for those same job sites. This practice violates the FBC.

## COUNT I
## FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)
(as to all Defendants)

43. Plaintiff repeats and realleges paragraphs 1-42 as if fully set forth herein.

44. Plaintiff directly competes with Defendants in the building inspections industry. Plaintiff competes with Weintraub by way of his affiliation with and actions on behalf of WEI.

45. All parties are engaged in competitive business throughout the State of Florida.

46. WEI engages in interstate commerce.

47. Weintraub, through WEI, engages in interstate commerce.

48. Defendants have made misleading factual representations and advertisements regarding its services in interstate commerce.

49. Defendants have made false and misleading representations and advertisements via email, via telephone, in-person, via bids or proposals, and through its statements of work.

50. In these advertisements and promotions, WEI holds itself out its actual and prospective customers as performing inspections that ensure compliance with relevant FBC, ASTM, and municipal regulations. Such representations are false.

51. Weintraub, individually and on behalf of WEI, holds himself out to actual and prospective customers as performing inspections that ensure compliance with relevant FBC, ASTM, and municipal regulations. Such representations are false.

52. Instead, Defendants intentionally do not enforce various portions of the FBC, ASTM, and municipal regulations.

53. Weintraub vouches for inspections that he knows were not properly performed.

54. Consequently, Defendants misrepresent to their clients and potential clients (as well as insurers, real estate developers, and the consuming public) that the projects they verify as in compliance with applicable codes and standards actually are so.

55. At the very least, Defendants' misrepresentations are likely to mislead, confuse, or deceive customers and prospective customers.

56. Defendants made and continue to make these representations with the intent to mislead its customers and the public.

57. Defendants knew or should have known that these representations were false and misleading.

58. Defendants false and misleading representations have deceived and confused Defendants' customers and have the capacity to continue to deceive Defendants' customers and the prospective customers.

59. Defendants' misrepresentations are sufficiently disseminated to actual and prospective customers seeking building inspection services to as to constitute advertising.

60. Customers would not do business with Defendants were they aware that, despite its representations the contrary, WEI and Weintraub, individually and on behalf of WEI, routinely, intentionally, record inspections that should fail as passing and/or pass inspections which were never performed, despite such conduct being prohibited by applicable building codes.

61. Defendants made their false and misleading representations in interstate commerce and the false and misleading representations affect interstate commerce.

62. Defendants false and misleading representations have had a negative material effect on Plaintiff's business and the business of other competitors.

63. Defendants' false and misleading representations pose a threat of imminent harm to the public.

64. As of the time this lawsuit is filed, it is likely that WEI inspectors are, at Defendants behest, aiding Defendants in the passage of inspections that violate applicable codes and standards.

65. As a result of Defendants' conduct, Plaintiff, other competitors, and the public have been and will continue to be damaged in an amount to be determined at trial.

66. Defendants' ongoing conduct poses an immediate threat to the public welfare and must be enjoined.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests the following relief:

(1) Damages to the fullest extent permitted by law under the Lanham Act;

(2) Corrective advertising under the Lanham Act in which Defendants must communicate to its current, prospective, and former customers that:

   a. It has routinely passed inspections that are not in compliance with applicable codes and standards;

b. Structures inspected by WEI from January 1, 2016 to the present should be re-inspected by a building inspection entity other than WEI.

(3) An injunction immediately suspending all of WEI's building inspection operations pending WEI's demonstration of compliance with all applicable building inspection regulations;

(4) Pre-judgment and post-judgment interest;

(5) An award of attorneys' fees and costs of the action; and

(6) Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: January 28, 2019

Respectfully submitted,

By: *s/ Jonathan E. Pollard*

**Jonathan E. Pollard**
Florida Bar No.: 83613
jpollard@pollardllc.com
**Trial Counsel**

**Christopher S. Prater**
Florida Bar No.: 105488
cprater@pollardllc.com

**Pollard PLLC**
100 SE 3rd Ave., Ste. 601
Fort Lauderdale, FL 33394
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiff*
*Aquila Inspection Services, LLC*